# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

DOMINIQUE WATSON,

*Plaintiff*,

v.

DISTRICT OF COLUMBIA, *et al.*,

*Defendants*.

Civil Action No. 1:23-cv-01670-BAH

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS

Defendants the District of Columbia and Thomas Faust have moved for partial dismissal of Plaintiff Dominque Watson's complaint, ECF 20. The Court should deny Defendants' Motion.

### FACTS

Plaintiff Dominique Watson is the widow of Giovanni Love, who committed suicide while incarcerated at the District of Columbia Jail (the "Jail"). Giovanni Love was arrested and taken to the Jail on May 27, 2022. ECF 1 (Compl.) ¶ 22. Mr. Love lived with a depressive or mood disorder that put him at risk of manic conduct, anxiety, depression, impulsive acts, self-harm, suicidal ideations, and suicide. *Id*. ¶ 13. He had been prescribed multiple antipsychotic medications. *Id*. ¶ 14. Prior to May 27, Mr. Love had attempted suicide by hanging, and had scars from self-harm on his body. *Id*. ¶¶ 15–16. Jail staff knew about Mr. Love's mental illness, risk of self-harm, and history of suicide attempts, as Mr. Love had been detained at the Jail before and had engaged in self-harm and attempted suicide while there. *Id*. ¶ 17. Indeed, the isolating, harsh, and impersonal conditions in the Jail drove Mr. Love to suicidal and self-harm behavior, and most of his self-harm and attempted suicide events occurred during his periods of detention at the Jail. *Id*. ¶ 18.

In addition to Mr. Love's history at the Jail, there were other signals to Jail staff that Mr. Love was at risk of suicide. The Jail's computerized inmate information system prominently displayed a warning that Mr. Love was "suicidal." *Id.* ¶ 19. The information system was widely accessible to Jail personnel, and would have been accessed by anyone at the Jail making placement decisions, classification decisions, overseeing detainee medical and mental healthcare, and any person responsible for protecting Jail detainees against self-harm. *Id.* ¶¶ 19–20. Also, during his several prior incarcerations, Jail and/or health staff had prescribed and/or administered multiple antipsychotic drugs to Mr. Love to address his mental illness and the risk that he would harm himself or commit suicide. *Id.* ¶ 21.

Despite all this, Jail staff did not protect Mr. Love from self-harm and suicide during his detention on May 27, 2022. Rather than placing him in a protective environment for frequent monitoring, he was assigned to a general population cell with access to tools that could enable suicide, like bedsheets. *Id.* ¶¶ 23–25. During this incarceration, Mr. Love's mental state deteriorated. *Id.* ¶ 26. He became agitated and often spoke about killing himself. *Id.* For a time, Mr. Love had a cellmate who kept him company and could intervene during his self-harm attempts, but Jail staff reassigned him to a single cell, leaving him isolated. *Id.* ¶¶ 27–28.

Alone in his cell, Mr. Love's condition worsened and he began to engage in acts of self-harm, including cutting himself. *Id.* ¶ 29. He became despondent, and on June 6, he wrote a suicide note to his wife. *Id.* ¶ 30. Despite his repeated reports to the Jail or health staff that he was suicidal, no one helped him. *Id.* ¶ 31. Instead, at least one correctional officer, Defendant Akaie, encouraged him to commit suicide. *Id.* ¶ 32.

Still, Jail staff did not transfer Mr. Love to a suicide-resistant cell or ensure frequent monitoring. He was left in a general cell with 30-minute interval monitoring. *Id.* ¶ 33. On the day

of Mr. Love's suicide, the assigned Jail staff neglected their monitoring duties and socialized. *Id.* ¶ 35. Consequently, on June 9, 2022, Mr. Love committed suicide using a bed sheet as a noose in his cell. When eventually found, he was pronounced dead at the scene.

Plaintiff alleges six claims against defendants District of Columbia, Thomas Faust (Director of the District of Columbia Department of Corrections), Officer Akaie, Unity Healthcare, and John Does.  In Count I, Plaintiff alleges that the individual Defendants failed to protect Mr. Love from the known and substantial risk of suicide in violation of the Fifth Amendment. *Id.* ¶¶ 37–46.  In Count I, Plaintiff also alleges supervisory liability for Faust and *Monell* claims against Defendants District of Columbia and Unity Health. *Id.* In Count II, Plaintiff alleges that the individual Defendants failed to accommodate his disability in violation of the Americans with Disabilities Act ("ADA"). *Id.* ¶¶ 47–59.  In Count III, Plaintiff alleges a Rehabilitation Act ("RA") claim against the District of Columbia. *Id.* ¶¶ 60–64. In Counts IV and V, Plaintiff alleges state law claims for negligence and wrongful death. *Id.* ¶¶ 65–75. Plaintiff seeks actual and punitive damages. *Id.* ¶ 78.

In support of her *Monell* claim, Plaintiff references three reports in the Complaint: Lindsay Hayes's *Report on the Suicide Prevention Practices within the District of Columbia, Department of Corrections Central Detention Facility*, (September 13, 2013) (the "Hayes Report"); the Washington Lawyers' Committee report, *D.C. Prisoners: Conditions of Confinement in the District of Columbia* (June 11, 2015) (the "WLC Report"); and a 2021 memorandum reporting on the Acting U.S. Marshal's inspection of the Jail (the "Marshal Report"). Defendants have attached these reports to their motion to dismiss. ECF 20-1; ECF 20-2; ECF 20-3.

Plaintiff's Complaint is plausible on its face, precluding dismissal. Contrary to Defendants' argument, each of the reports support Plaintiff's *Monell* allegations. The Court should deny Defendants' Motion to Dismiss.

## STANDARD OF REVIEW

In deciding a Rule 12(b)(6) motion, a court "constru[es] the complaint liberally in the plaintiff's favor," "accept[ing] as true all of the factual allegations contained in the complaint," *Kassem v. Wash. Hosp. Ctr.*, 513 F.3d 251, 253 (D.C. Cir. 2008), "with the benefit of all reasonable inferences derived from the facts alleged." *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006). In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court established that Plaintiffs need only meet two criteria to withstand a motion to dismiss. The complaint need only "[1] contain sufficient factual matter, accepted as true, to [2] state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. 662, 678; *Twombly*, 550 U.S. 544, 57. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ARGUMENT

### A.    Plaintiff has alleged facts supporting a Section 1983 claim against the District.

The Complaint alleges that the District "had a systematic lack of care for detainees by providing inadequate and irrelevant training to its employees and clinicians that fell below applicable national standards, and a custom of performing hollow inmate medical evaluations that were comprised of cursory, incomplete, or meaningless questions that lead to flawed data and avoidable failures to diagnose and treat seriously ill and obviously afflicted inmates," as well as a "widespread lack of monitoring of suicidal detainees. Compl. ¶ 40.

Thus, Plaintiff alleges that the District's failure to train its employees in the proper detection, treatment, and monitoring of potentially suicidal detainees amounts to deliberate indifference to the rights of detainees like Mr. Love. Under D.C. Circuit precedent, these allegations are sufficient to place the District on notice of the basis of Plaintiff's claims against it, which satisfies the pleading standard and is sufficient to survive a motion to dismiss under Rule 12(b)(6). *See Atchinson v. District of Columbia*, 73 F.3d 418, 423 (D.C. Cir. 1996) (holding that a complaint alleging a single incident of police officer misconduct together with an assertion that the District's failure to train its officers showed deliberate indifference was sufficient to state a claim under Monell); *Powers-Bunce v. District of Columbia*, 479 F. Supp. 2d 146, 155–56 (D.D.C. 2007) (same). These allegations alone are sufficient to deny the District's motion.

Plaintiff has gone further, however. To provide detail regarding her factual allegations, Plaintiff has identified information in three different reports highly critical of the District's operation of the Jail—two (the Hayes and WLC Reports) concerning suicide prevention specifically, and one (the Marshal Report) offering criticisms that implicate suicide prevention. Defendants focus on these reports, and argue that if they are interpreted with a gloss favoring the defense, they disprove Plaintiff's allegations. Specifically, Defendants argue that the Hayes report, the WLC report, and the US Marshal report *demonstrate* that DOC officials were not deliberately indifferent to the Fifth Amendment rights of Jail inmates at risk for suicide. Consequently, Defendants argue, Plaintiff's Fifth Amendment claim against the District should be dismissed.

The District is asking the Court to determine, at the Rule 12 stage, that the facts contained in three different reports—two of which are lengthy—foreclose recovery for Plaintiff as matter of law. But at this stage, it is not the Court's function to parse through the report, focus on parts of

the report selected by defendants, and weigh those curated report portions against Plaintiff's

allegations. And in all events the reports, when read as a whole, *substantiate* Plaintiff's claims.

The reports do not demonstrate that the Jail was implementing measures to prevent suicide.

Consider the WLC report alone, which both summarizes the Hayes report and offers its own

findings.  WLC report finds several, serious deficiencies, and notes that these issues were not been

fixed even after the Hayes report concluded that the suicide prevention practices at the Jail were

"in need of immediate corrective action." ECF 20-2 at 4, 21–22. The WLC report describes

specific, persistent issues with non-suicide-resistant cells, isolating conditions, and insufficient

supervision:

> [S]everal prisoners who were under observation for potentially suicidal behavior
> were housed in non-suicide resistant cells that contained "dangerous anchoring
> devices." In response, the Hayes Report "strongly recommended that DOC officials
> embark upon an inspection program to ensure that prisoners on suicide precautions
> are housed in 'suicide resistant' cells."
> . . .
>
> [T]he "precautions" taken with respect to prisoners who were possibly suicidal
> were "overly restrictive and seemingly punitive." . . . [This] enhances isolation and
> is antitherapeutic." The "seemingly punitive" conditions also decreased the chances
> that prisoners would honestly report suicidal ideations.
> . . .
>
> [P]risoners placed on "behavioral observation" were monitored only once every 30
> to 60 minutes. Hayes even suggested that this irregular monitoring of suicidal
> prisoners showed "complete unconcern for inmate safety," and that it was
> "obvious" that behavioral observation was being used to by-pass more regular
> monitoring.

ECF 20-2 at 21–22 (quoting the Hayes report).

Defendants represent in their Motion that the District addressed all the recommendations

in the Hayes report. But the WLC report concluded that while the District *claimed* to have

implemented the Hayes recommendations, it was "difficult to assess whether all of the required

remedial measures have been implemented." *Id*. at 2.  The WLC goes on to question whether the

6

District changed much of anything since the Hayes report had been issued, and noted considerable

problems on its tour:

> [It was not] clear how prisoners who were isolated for exhibiting suicidal behavior would be treated in a manner that is less restrictive or punitive than before . . . . Moreover, it is not clear that . . . safe cells are being made available to inmates in all cases where there may be a need . . . . It also is not clear whether a best-practices standard has been applied to confirm that safe cells are in fact adequately suicide-resistant. On our tour, a cell at the D.C. Jail deemed to be a safe cell appeared to be little different from a regular cell and included potentially dangerous fixtures[.]

> [D]ouble-celling . . . . was described as a suicide prevention measure. Individuals in the mental health unit, however, are generally housed one to a cell.

*Id.* at 25. At this stage, the conclusions in the two reports are more than enough to allege a claim

against the District.

The Hayes and WLC Reports were followed by the Marshal Report, dated November 1,

2021. That final report is not as lengthy, but indicates a poorly run facility in disarray, with poor

intake screening and guards who antagonize prisoners—both acts that, Plaintiff alleges, befell

Mr. Love.  The report states "there is evidence of systematic failures," including:

- Jail entrance screening procedures were inconsistent and sloppy.
- Detainees had observable injuries with no corresponding medical or incident reports available to inspectors.
- DOC staff were observed antagonizing detainees.
- DOC staff were observed not following COVID-19 mitigation protocols.
- Several DOC staff were observed directing detainees to not cooperate with USMS inspectors. One DOC staffer was observed telling a detainee to "stop snitching".
- Supervisors appeared unaware or uninterested in any of these issues.

ECF 20-3 at 1–2. The US Marshal made these findings after "interview[ing] more than 300

federal detained persons, and sp[eaking] with many DOC staff."  *Id.* at 1. Drawing inferences in

favor of Plaintiff, and considering the totality of the information they provide, the three reports

support Plaintiff's *Monell* allegations.

The Defendants argue that the Hayes and WLC Reports were issued too far in the past. That argument, however, ignores the context of the reports: both are extensive surveys, not recounting of isolated incidents, and together, the Hayes and WLC reports support the inference that the Jail's problems with respect to suicide prevention are sustained—persisting, as the WLC Report indicates, even after the Hayes Report pointed them out to the District more than a year previously. The WLC Report is particularly troubling in noting that shortly after announcing a "task force" to fix the problems identified in the Hayes report, the District simply stopped reporting on its progress in fixing those problems. *See* WLC Report, ECF 20-2 at 20–21. Considered together, the reports support the inference that the District failed, over a sustained period, to fix serious problems regarding suicide prevention that had been described to it. And those reports can be considered alongside the US Marshal report, which indicates that there are still persistent problems in the basic management of the Jail. Drawing all reasonable inferences in Plaintiff's favor, all these facts are enough for the Court to infer a widespread practice, sufficient to state a *Monell* claim against the District at the pleading stage.

> **B.    Plaintiff has alleged a claim against Faust under 42 U.S.C. § 1983.**

The District's policies, summarized above, are attributable to Faust. Defendants' arguments for dismissal of the claims against Faust are based on the premise that the Hayes and WLC reports exonerate him and demonstrate definitively that the Jail had adequate suicide prevention practices. As Plaintiff has set forth above, however, the reports do not command that inference, and to the contrary permit the opposite conclusion. The Complaint and reports, moreover, identify specific policies and practices, either implemented by Faust or condoned and kept in place during his tenure, that plausibly could have been the driving force behind Mr. Love's death. Plaintiff further alleges that Jail policy allowed for inadequate suicide prevention training of employees, inadequate screening of detainees, a lack of monitoring of suicidal detainees, and

8

placement in non-suicide-resident cells. *See, e.g.*, Complaint ¶ 40. These practices, attributable to Faust, caused Mr. Love's death. Mr. Love had a history of suicide attempts by hanging and was exhibiting signs that he was a suicide risk, yet DOC practice allowed him time to fashion a noose and hang himself without being monitored.

As alleged in the Complaint, there had been multiple suicides at the D.C. Jail prior to Mr. Love's death. Defendants' representation that Faust had implemented suicide precautions in the past does not foreclose relief. Jail managers may be liable for deliberate indifference where suicide prevention measures are so inadequate that the inadequacy should have been obvious. *Boncher v. Brown County*, 274 F.3d 484, 486–87 (8th Cir. 2001). Moreover, having suicide prevention policies in place does little good if those policies are not followed. *See Woodward v. Corr. Med. Servs. Of Ill., Inc.*, 368 F.3d 917, 929 (7th Cir. 2004) ("For all intents and purposes, ignoring a policy is the same as having no policy in place in the first place."). The Court can infer that Faust knew that his Jail policies presented a serious risk to inmates, knew that the suicide problem persisted after the various audits of the Jail, and knew that his response (and lack of response) to the audits was continuing to pose a serious risk to inmates. Those facts permit the inference that Faust was deliberately indifferent to the known risk of inmate suicide. Plaintiff has plausibly alleged a Fifth Amendment claim against Faust.

### C.    Faust is not entitled to qualified immunity.

Defendants' qualified immunity argument is based on its version of the events related to the facts in the reports, and its representation that Faust fixed all the problems identified. But a qualified immunity defense, at this stage, must be based not on the defendant's gloss on the facts, but on the non-moving party's allegations and the inferences those allegations permit. Plaintiff's allegations permit the inference that the problems persisted even after Faust was informed of them,

despite self-serving "task force" reports claiming that everything had been fixed.  At the Rule 12 stage, that is enough to defeat a qualified immunity defense.

The inquiry into whether a defendant can assert qualified immunity proceeds in two steps. First, the court must determine if the pleaded facts demonstrate that the defendant's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If a violation is established, "the next, sequential step is to ask whether the right was clearly established." *Id.* Plaintiff has alleged deliberate indifference to the health of Mr. Love. An inmate's right to be free from deliberate indifference to a serious medical need is clearly established. *Farmer v. Brennan*, 511 U.S. 825 (1994). As such, Faust is not entitled to dismissal. Moreover, the determination of whether an individual defendant is entitled to qualified immunity is a factual question, and a determination on this issue now is premature.

More specifically, it is clearly established that an official may be liable for not preventing the suicide of a prisoner if the official was aware of a serious risk that the prisoner would commit suicide and failed to take reasonable steps to prevent it. *See Troutman v. Louisville Metro Department of Corrections*, 979 F.3d 472 (6th Cir. 2020) (reversing summary judgment in favor of defendant, finding issue of fact whether classification officer was deliberately indifferent where decedent with several risk factors had previously attempted suicide at jail, was medically cleared to general population, then placed in solitary confinement with access to bedsheets); *Converse v. City of Kemah*, 961 F.3d 771 (5th Cir. 2020) (defendants liable where they were subjectively aware that detainee was suicidal, and yet gave him a loose blanket, which they knew was a frequent means of suicide); *Penn v. Escorsio*, 764 F.3d 102 (1st Cir. 2014) (law clearly established that official with knowledge of suicide risk must take some action to abate it).

The Supreme Court has held that for a prison official to be held liable for the denial of suicide prevention measures, there must be some indication that an inmate faced a substantial risk of serious harm. *See Taylor v. Barkes*, 575 U.S. 822 (2015) (finding for defendant where there was not an indication that the inmate was at risk of harm upon intake). Courts of Appeals have interpreted *Taylor* to mean that threats of suicide, or other facts, can be sufficient to put jailers on notice that a prisoner may be at risk of harming himself. *See Hall v. Ryan*, 957 F.2d 402 (7th Cir. 1992) (where arrestee behaved strangely at police headquarters, and 30 minutes after arrest was found hanging in his cell by his undershorts, court held plaintiff had raised a sufficient issue of whether officers were deliberately indifferent). Here, the widespread practices identified in the Complaint and reports support the inference that Faust aware of and indifferent to an unacceptable risk of suicide by jail detainees, yet ultimately failed to take the steps reasonably necessary to prevent it. At this stage, that is enough to defeat Faust's qualified immunity defense.

Defendants' citation to *Bernier v. Allen*, 38 F.4th 1145 (D.C. Cir. 2022) is inapposite. In that case, a prisoner sought an anti-viral drug to treat his hepatitis. The drug had been approved by the medical community two months prior for patients with the most serious medical need, but the defendant medical providers determined the prisoner was not within the most serious category and denied him the medication. 38 F.4th at 1155. That suggests a *reasonable* course of action in light of a medical evaluation; there are no similar allegations here. Faust is liable because, as alleged in the Complaint and reports, his actions and inactions amounted to an *inadequate* response to the risk of suicide to suicidal prisoners.

Mr. Love's right against deliberate indifference to his serious risk of suicide was clearly established when he died, and Faust is not immune from suit. The Court should deny Defendants' motion.

**D.     Plaintiff has stated claims under the Americans with Disabilities Act and Rehabilitation Act.**

Title II of the ADA provides that no qualified person with a disability shall "be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  The ADA defines the term "disability" as "a physical or mental impairment that substantially limits one or more major life activities."  42 U.S.C. § 12102(1)(A). Defendants do not dispute that Mr. Love had a known, qualified disability, ECF 20 at 21, but they argue that Plaintiff has not alleged Mr. Love was denied access to a Jail service because of his disability.

Defendants' arguments for dismissal of the ADA claim focus on the *Monell* and supervisory allegations against the District and Faust, which defendants superimpose as the relevant facts for the ADA claims as well.  Those "*Monell*" arguments, as Plaintiff has set forth above, are largely founded on an incorrect premise, and for the reasons set forth above, even if Plaintiff's ADA claims were confined to "*Monell*" proof, her claims would survive.

But Plaintiff's ADA claims are broader.  Plaintiff alleges that Mr. Love's mental illness meant that he had considerable difficulty controlling his behavior and avoiding self-harm.  As a result, he required particular accommodations from the District to receive a housing placement that was reasonably free of danger:  placement in a suicide-resistant cell, such that he would not be placed in a cell with implements to harm himself, like a bedsheet; frequent, diligent checks by guards in order to ensure he was not engaged in self-harm; and an environment in which he was not antagonized or baited by jail staff. Detainees without mental illness might be able to remain safe if these accommodations were lacking, but because of his disability, Mr. Love, because of his disability, could not.  All these accommodations were necessary to keep Mr. Love reasonably

safe in his cell.  Plaintiff alleges that none of them were provided to him, and he committed suicide as a result. Compl. ¶¶ 31–34.

Those allegations state an ADA claim for failure to accommodate Mr. Love's disability. *See Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998) (noting that access to medical services are benefits provided to inmates within the meaning of Title II); *White v. Watson*, No. 16-560, 2016 WL 6277601, at *6 (S.D. Ill. Oct. 27, 2016) (holding that a prison's failure to implement suicide-prevention measures can support a claim for failure to accommodate); *Boyd v. Johnson*, No. 10-cv-701-MJR, 2011 WL 1196320, at *6 (S.D. Ill. Mar. 29, 2011) (finding that plaintiff stated an ADA claim where defendants did provide accommodations for his epilepsy so that his cell would be safe); *Brandon v. Smith*, No. 06-1316, 2008 WL 879444, at *4 (C.D. Ill. Mar. 28, 2008) (declining to dismiss the ADA claim where the plaintiff alleged that the defendant failed to accommodate an inmate's mental illness and he committed suicide).

The Court should deny Defendants' Motion to Dismiss Plaintiff's ADA claim (Count II). For the same reasons, Plaintiff's Rehabilitation Act claim (Count III), which turns on the same essential facts (plus a federal funding requirement, which the District does not dispute), should not be dismissed either.

### E.    Plaintiff has alleged state law claims against the District.

Plaintiff does not oppose Defendants' argument that the Court should retain its supplemental jurisdiction.

Defendants seek dismissal of Counts IV and V of Plaintiff's complaint, contending that Faust cannot be held vicariously liable for the alleged unconstitutional actions of his employees. However, Plaintiff is not seeking to hold Faust vicariously liable for the individual Defendants' unconstitutional conduct under Section 1983. Indeed, in Count I, Plaintiff has asserted supervisory

liability for Faust, and a *Monell* claim against the District for the unconstitutional policies, practices, and customs that caused Mr. Love's injuries. In Counts IV and V, Plaintiff is seeking to hold the District of Columbia liable for the state law torts committed by its agents within the scope of their employment. Plaintiff has asserted state law claims for negligence and wrongful death against the individual defendants, and as their employer, the District of Columbia is liable for their misconduct under the doctrine of *respondent superior. Schecter v. Merchants Home Delivery, Inc.*, 892 A.2d 415, 427 (D.C. 2006). Defendants' may not disagree—they have not moved for dismissal of the state law claims as to the District. Accordingly, the Court should not dismiss Plaintiff's state law claims against the District.

### F.     Plaintiff has alleged state law claims against Faust.

Defendants seek dismissal of Counts IV and V as to Faust. Specifically, Defendants argue that Faust cannot be vicariously liable for negligence and is entitled to dismissal of the other claims against him, so the derivative wrongful death claim should also be dismissed.

Under D.C. law, "[w]hen . . . the death of a person is caused by the wrongful act, neglect, or default of a person . . . and the act, neglect, or default is such as will, if death does not ensue, entitle the person injured . . . to maintain an action and recover damages, the person who . . . is liable if death does not ensue is liable to an action for damages for the death." DC CODE § 16-2701. Here, Plaintiff has alleged facts that plausibly suggest that Mr. Love's suicide was the result of Fausts's actions and inactions. Plaintiff has plausibly alleged that Faust knew vulnerable inmates were at risk of suicide, but did not implement adequate safety measures. Plaintiff has also alleged that the individual Defendants knew Mr. Love was a suicide risk and failed to take any measures to monitor and protect him. *Id.* ¶¶ 31–34. As a result, Mr. Love committed suicide. *Id.* It is therefore reasonable to infer that by his acts and omissions, Faust caused Mr. Love's death. *See Finkelstein*

*v. District of Columbia*, 593 A.2d 591, 594 (D.C., 1991) (upholding wrongful death jury verdict where jail inmate showed "visible symptoms of distress" in his cell but guards did not intervene, check on him more frequently than every thirty minutes, or provide medical intervention that would have prevented his death"). The same allegations support the negligence claim, not under a vicarious liability theory but on the basis that, by failing to implement suicide prevention measures, Faust breached his duty to protect Mr. Love's safety and was the proximate cause of his death.

Accordingly, Plaintiff has sufficiently stated state law claims for negligence and wrongful death against Faust, and against the District of Columbia under a *respondeat superior* theory.

## CONCLUSION

For the reasons set forth above, the Court should deny Defendants' Partial Motion to Dismiss.

October 10, 2023                                    Respectfully submitted,

                                                   /s/ Stephen H. Weil
                                                   Stephen Weil
                                                   Maria Makar *motion for pro
                                                   hac vice forthcoming*
                                                   Loevy & Loevy
                                                   311 N. Aberdeen Street, Third Floor
                                                   Chicago, IL 60607
                                                   (312) 243-5900
                                                   weil@loevy.com

                                                   *Attorneys for Plaintiff Dominque Watson*