**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DOMINIQUE WATSON, *et al.*, | |
| *Plaintiffs*, | |
| v. | Civil Action No. 1:23-cv-01670-BAH |
| DISTRICT OF COLUMBIA, *et al.*, | |
| *Defendants*. | |

**DEFENDANT DISTRICT OF COLUMBIA**
**AND THOMAS FAUST'S REPLY IN FURTHER SUPPORT OF**
**THEIR PARTIAL MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Plaintiff Dominique Watson (Plaintiff), in her Opposition [28] to the Partial Motion of
Defendants District of Columbia (District) and Thomas Faust (Director Faust) to Dismiss the
Complaint, does not deny that her Complaint [1] relies upon the Report of Lindsay Hayes (Hayes
Report), the Report of the Washington Lawyers Committee (WLC Report) and the Report of the
United States Marshals Service (USMS Report) as factual support as to her Fifth Amendment
deliberate indifference claims involving the District's Central Detention Facility (CDF). But the
Hayes and WLC reports were prepared nine and seven years respectively before the suicide
death of Giovanni Love (Love) at CDF, and Plaintiff fails to explain how these remote in time
reports can provide factual support for her Complaint [1]. Moreover, the USMS Report does not
even mention the subject of suicides within CDF.

Further, Plaintiff's Opposition [28] does not provide caselaw support as to how the
District and Director Faust are culpable for deliberate indifference to the risk of inmate suicide at
CDF, where Director Faust upon learning of an increased rate of inmate suicide, promptly
responded to the problem. Moreover, Plaintiff does not challenge the  District's argument that a

plaintiff bringing ADA and Rehabilitation Act claims against a municipality for damages is required to make a showing of deliberate indifference akin to a *Monell* Section 1983 claim. Thus, these claims fail because the Complaint [1] does not demonstrate plausible entitlement to relief as to her deliberate indifference claim under the Fifth Amendment. Finally, Plaintiff's common law claim of negligence against Director Faust frails because she seeks to hold him liable under a theory of respondeat superior liability.

## ARGUMENT

I. **Plaintiff's Reliance Upon The Reports Of Hayes, WLC, And USMC To Establish Her Plausible Entitlement To Relief As To Her Fifth Amendment Claim Is Misplaced.**

A. **The Hayes and WLC Reports Are Too Remote In Time As To Giovanni Love's Suicide To Support Plaintiff's Plausible Entitlement To Relief.**

Relying upon *Moore v. District of Columbia*, 79 F. Supp. 3d 121, 140 (D.D.C. 2015) and *Egudu v. District of Columbia*, 72 F. Supp. 3d 34, 43 (D.D.C. 2014), the Defendants posited in their Partial Motion to Dismiss that the nearly nine-year gap between the Hayes Report and Mr. Love's death, and a seven-year gap between the WLC Report and Mr. Love's death are too remote to plausibly suggest that in 2022. Defs.' Motion at 14-16.[1] Plaintiff's response fails to address the remoteness argument head on. Rather, although it is somewhat unclear, she appears to assert that Defendants' remoteness argument is inapplicable here because the reports "both are extensive surveys, not recounting of isolated incidents." Pl. Opp'n [28 at 8]. But characterizing the reports as extensive surveys is beside the point. The Hays and WLC Reports were prepared nine and seven years respectively before Love's death. It is pure speculation to infer that the conditions described in the reports continued until 2022. *See Egudu v. District of Columbia*, 72 F.

---

[1]     Page references are those denominated by ECF.

Supp. 3d at 130.  A complaint must plead enough facts to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 570 (2007) (internal quotation marks and citation omitted).  Consequently, the Court should dismiss Plaintiff's constitutional claims against the Defendants because the factual allegations as to deliberate indifference are too remote in time to plausibly entitle Plaintiff to relief.

    **B.**  <u>The CDF Inspection Report By The USMS Is Too Vague and Conclusory To Support The Fifth Amendment Claim Against Director Faust.</u>

Admittedly, the USMS observed several problematic conditions at the CDF as of November 1, 2021.  But it is pure speculation to relate these conditions to a risk of inmate suicide.  For example, the inspectors claim they observed that officers were not following COVID-19 mitigation procedures and that CDF entrance screening procedures were sloppy and inconsistent.  USMS Letter at 1-2 [20-3].  It is important to recall that a constitutional claim alleging a custom or policy of  deliberate indifference must allege that the practices in question directly caused the plaintiff's injury.  *See City of Canton v. Harris*, 489 U.S. 378, 388–92 (1989)); *Blue v. District of Columbia*, 850 F.Supp.2d 16, 26 D.D.C. (2012), *aff'd* 811 F.3d 14 (D.C. Cir. 2015).  It simply cannot be said that a failure to follow proper COVID procedures or inconsistent CDF entry procedures can be deemed, without more, a direct cause of Love's suicide.  Without such a connection, the factual allegations of the USMS Report do not give rise to Plaintiff's plausible entitlement to relief as to her Fifth Amendment claim and thus those claims should be dismissed.  *See, e.g.*, *Costello v. District of Columbi*a, 826 F.Supp.2d 221, 225 (D.D.C. 2011) (merely pleading insufficient training without further factual enhancement is insufficient to establish plausible entitlement to relief as to deliberate indifference claim).

    **C.**  <u>The Hayes and WLC Reports Do Not Assert Facts Plausibly Establishing a Fifth Amendment Claim of Deliberate Indifference To the Risk of Inmate Suicide As To Director Faust and the District.</u>

3

Plaintiff asserts that "Defendants represent in their Motion that the District addressed all the recommendations in the Hayes report." Pl.'s Opp'n [28] at 6. Implicit in this assertion is that if the District did not resolve all of the recommendations in the Lindsey report, then the Defendants' motion to dismiss fails. Plaintiff then points to the WLC Report's difficulty in ascertaining whether all the required remedial measures were implemented. *Id.* But nowhere in their motion do the Defendants claim that all the problems outlined in the Hayes Report were resolved, nor do they need to do so to prevail upon the motion. The issue here is not whether all issues outlined by the Hayes Report were addressed, but rather whether the Hayes and WLC Report state facts that plausibly entitle Plaintiff to relief as to her deliberate indifference claim and they decidedly do not.

It bears repeating that to hold an official liable for deliberate indifference to constitutional rights, one must demonstrate "a mental state more blameworthy than negligence," and "a state of mind that is the equivalent of criminal recklessness." *Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir. 2003); *Galloway v. Anuszkiewicz*, 518 F. App'x 330, 336 (6th Cir. 2013 (same). Conduct rising to the level of deliberate indifference must also shock the conscience. *Estate of Phillips v. District of Columbia,* 455 F.3d 397, 404 (D.C. Cir. 2006). Thus, cases hold that before an official may be liable under a "failure to act" theory, as to unconstitutional conduct, one "must facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Int'l Action Ctr. v. United States*, 365 F.3d 20, 24 (D.C. Cir. 2004) (J. Roberts) (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988)); *see also Collins v. Seeman*, 462 F.3d 757, 762 (7th Cir. 2006) (deliberate indifference is "something approaching a total unconcern for [the detainee's] welfare in the face of serious risks."); *Woodward v. Corr. Med. Servs. Of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (municipality is deliberately

4

indifferent where policymaking level of government fails to do anything in response to risk of harm).  The Hayes Report in no way presents facts tending to demonstrate deliberate indifference, as articulated in the above cases.

Plaintiff's Opposition describes her deliberate indifference claim as:

> The Complaint alleges that the District "had a systematic lack of care for detainees by providing inadequate and irrelevant training to its employees and clinicians that fell below applicable national standards, and a custom of performing hollow inmate medical evaluations that were comprised of cursory, incomplete, or meaningless questions that lead to flawed data and avoidable failures to diagnose and treat seriously ill and obviously afflicted inmates," as well as a "widespread lack of monitoring of suicidal detainees. Compl. ¶ 40.

Pl. Opp'n [28] at  4.

But the Hayes Report, contrary to the assertions of the Plaintiff, did not come even close to these conclusions.  Rather, the Report found as to the screening process for suicide:

> 1.      "Both the DC Department of Corrections and Unity Health Care policies adequately address requirements for intake screening to identify potentially suicidal behavior"  Ex. A, Hayes Report at 14.

> 2.      Each inmate receives "intake screening administered by a health care provider from Unity Health Care, either a physician, physician's assistant, or nurse practitioner a practice that far exceeds the standard of care in other CDF facilities throughout the country in which intake screening is completed by either health-trained correctional officers or nursing staff." *Id*. at 15.

> 3.      The intake screening form included "all good questions for an adequate suicide risk inquiry. In addition, and perhaps most importantly, the screening process is conducted within the privacy of the medical provider's office. This better ensures the likelihood of an inmate feeling comfortable in self-reporting sensitive medical and mental health information" *Id.* at 16.

Further, the Report made no findings as to the overall skill and performance of staff who

administered the screening tests, Ex. A, Hayes Report at 15–16.  ("Although disappointing to observe, based upon a sample of only one case, this writer will not offer any conclusions as to the quality of the intake screening administered by either Unity Health Care providers or mental health clinicians.").  As to training, nowhere does the Report suggest that the training provided to officers was "irrelevant."  Rather, the Report concluded "that the content of the training curricula is in need of  improvement" and the number of training hours needed to be increased.  *Id.* at 10.  The need for "improvement" and additional hours of training cannot be fairly described as a finding of irrelevant training that is deliberately indifferent to the risk of suicide.  *See Connick v. Thompson*, 563 U.S. 51, 68 (2011) ("[P]rov[ing] that an injury or accident could have been avoided if an [employee] had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct will not suffice [to demonstrate deliberate indifference]).

　　As to Plaintiff's allegation that the CDF failed to monitor suicidal detainees, the Hayes Report did aim its chief criticism of the CDF at the conditions and policies of the housing units in which inmates identified as suicidal were monitored within the CDF.  *See* Hayes Report at 22-28.  But the Complaint does not allege that Love was housed in a suicide prevention unit when he committed suicide.  Rather the Complaint [1] alleges that on May 27, 2022, when Mr. Love was arrested and  detained at the CDF, he was not screened as an at risk for suicide inmate but rather was placed in a general population cell, where he was at great risk for suicide. Complaint [1 ] ¶¶ 22-25.  Thus, deficient conditions and policies within the housing units denominated for inmates at risk for suicide could not have proximately caused Love's suicide because he was not housed in such a unit when he committed suicide.  A constitutional claim, however, alleging a custom or policy of  deliberate indifference must allege that the practices in question directly caused the plaintiff's injury.  *See City of Canton,* 489 U.S. at 388–92; *Blue*, 850 F.Supp.2d at 26.

What can be gleaned from the Hayes report is that Director Faust was not deliberately indifferent to the plight of CDF inmates who were at risk of suicide.  Indeed, the Hayes Report salutes Director Faust for responding to the increase in the suicide rate at the CDF by assembling a Suicide Prevention Task Force to review customs and practices at CDF aimed at preventing suicides and by engaging the services of an outside auditor to review CDF practices, Hayes Report [1] at 2-3.  Further, as noted in the WLC Report as of October 14, 2013, CDF implemented several key measures to reduce suicides including:

- Increase the frequency of "Segregation and Intake unit checks" to at least once every fifteen minutes

- Ensure that no one is placed in a single cell unless there's an overwhelmingly compelling reason to do so

- Include a dedicated booking supervisor at intake to "monitor all high-risk inmates to determine if an expedited referral to a mental health clinician is warranted"

- Implement a new "Razor plan" that prohibits prisoners from accessing razors

- Institute a more robust four-hour suicide prevention training curriculum

WLC Report at 23–24.

All of these measures as reported in the Hayes and WLC Reports, which Plaintiff claims to rely upon in support of her plausible entitlement to relief, make clear that Plaintiff's Complaint [1] fails to establish a claim of Fifth Amendment deliberate indifference.  *See Byrd v. District of Columbia,* 297 F.Supp. 2d , 136, 142 (D.D.C. 2003), *aff'd* No. 03-7196, 2004 WL 885228 (D.C. Cir. April 26, 2004 (summary affirmance) (plaintiff's claim alleging deliberate indifference on part of police to use of excessive force fails, where police department upon learning of excessive force statistics requested that Department of Justice (DOJ) review all aspects of its use of force and then implemented changes recommended by DOJ); *Robinson v. District of*

*Columbia*, 403 F. Supp. 2d 39, 54-55 (D.D.C. 2005) (same).  Plaintiff's Fifth Amendment claims against Director Faust and the District should as a result be dismissed.

### D.   **Plaintiff Fails To Demonstrate that Director Faust Is Not Entitled To Qualified Immunity**

Plaintiff asserts that Director Faust is not entitled to qualified immunity because the case law is clearly established that an inmate has a right to be free from deliberate indifference to a serious medical need.  Pl. Opposition [28] at 10.  This proposition of law is undoubtably true, but irrelevant because the Supreme Court has repeatedly stressed that courts must not define clearly established law at a high level of generality because doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority. It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply otherwise, the rule is not one that every reasonable official would know.

*District of Columbia v. Wesby*, 583 U.S. 48, 64 (2018) (internal citations omitted).

Further, Plaintiff argues without citation that "the determination of whether an individual defendant is entitled to qualified immunity is a factual question, and a determination on this issue now is premature."  Pl. Opp'n [28] at 10.  This is simply wrong. "Whether a § 1983 defendant's conduct violates the 'clearly established' constitutional rights of the plaintiff is a pure question of law that must be resolved by the [C]ourt."  *Pitt v. District of Columbia*, 491 F.3d 494, 509 (D.C. Cir. 2007).

Plaintiff further posits that the Court cannot grant Director Faust qualified immunity because to do so the Court must rely upon his "gloss of the facts" appearing in the Hayes Report

and his representation that he "fixed" all of the problems identified in the Hayes Report.  Pl. Opp'n [28] at 9.  But Director Faust's response to the increased level of suicides within CDF is not in dispute.  Rather than turn a blind eye to the problem, he immediately responded to it by convening a task force to review CDF procedures and he also retained an outside auditor to make recommendations for change.  Further, as noted by the WLC Report, changes were implemented to respond to the problem.  Plaintiff has provided the Court with no cases in which an official has similarly responded to a life-threatening problem and yet the response was deemed to amount to deliberate indifference.  Indeed, the caselaw in this jurisdiction is to the contrary.  *See Byrd v. District of Columbia,* 297 F.Supp. 2d , 136, 142 (D.D.C. 2003), *aff'd* No. 03-7196, 2004 WL 885228 (D.C. Cir. April 26, 2004) (summary affirmance); *Robinson v. District of Columbia*, 403 F. Supp. 2d 39, 54-55 (D.D.C. 2005); *see also Collins v. Seeman*, 462 F.3d 757, 762 (7th Cir. 2006) (deliberate indifference requires "something approaching a total unconcern for [the detainee's] welfare in the face of serious risks. (internal quotations and citations omitted).  *Cf. Penn v. Escorsio*, 764 F.3d 102 (1st Cir. 2014) (law clearly established that official with knowledge of suicide risk must take some action to abate it).  In short, the Court should grant qualified immunity to Director Faust.

II.     **The Court Should Dismiss Plaintiff's ADA and Rehabilitation Act Claims**.

    A.     **Plaintiff Has Not Demonstrated That Her Claim Is Covered by the ADA.**

        Although Plaintiff claims that her ADA and Rehabilitation Act claims are "broad" in fact they are quite focused.  She claims that Love "required mental healthcare and other services sufficient to protect him from harming himself[.]"  Compl. [1] ¶ 53.  But despite this need, upon his admission to CDF he was not housed in a suicide prevention unit but rather he was placed in a general population unit where he would not receive services directed tom his mental health

needs. *Id.* at ¶¶ 22-25. This amounts to a claim that his medical needs were not being met, and thus the ADA is not applicable. *See Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) (prisoner alleging improper medical treatment does not allege claim under ADA because he is not alleging exclusion from some prison service because of his disability); *Nasious v. Colorado*, 495 Fed. Appx. 899, 902 (10th Cir. 2012) (prisoner who claims inadequate medical treatment does not make out a discrimination claim because he was not treated worse because of his discrimination).

The Supreme Court case relied upon by Plaintiff does not mandate a different result. In *Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206, (1998), an inmate alleged that he was denied admission to an early release program because he suffered from hypertension. That case is clearly distinguishable from the circumstances here. In *Yeskey*, the Plaintiff was treated differently because of his disability (i.e., his disability prevented him from participating in a jail program) that was apart from a claim of failure to receive proper treatment.and thus his claim was deemed to be within ADA coverage. *Id*. at 210. Thus, *Yeskey* does not advance Plaintiff's ADA claim.

## B. Plaintiff's ADA Claim Fails Because the Complaint Does Not State a Claim of Deliberate Indifference.

Although it is unclear, Plaintiff does not appear to oppose the District's argument that a plaintiff bringing an ADA claim against a municipality must show deliberate indifference akin to a *Monell* Section 1983 claim. *See Montgomery v. District of Columbia*, No. 18-cv-1928, 2019 WL 3557369, at *9 (D.D.C. Aug. 5, 2019). In any event, she has not advanced any argument to the contrary, and it can be treated as conceded. The District need not repeat the arguments previously advanced regarding Plaintiff's failure to plead plausible entitlement to

relief as to her claim of deliberate indifference on the part of the District.  Based upon these arguments the Court should dismiss Plaintiff's ADA claims.

**III.**     **Plaintiff's Negligence Claim Against Director Faust Should Be Dismissed.**

Plaintiff, in her opposition to dismissal of her negligence claim against Director Faust, argues that she has alleged that "the individual Defendants knew Mr. Love was a suicide risk and failed to take any measures to monitor and protect him. *Id.* ¶¶ 31–34.  As a result, Mr. Love committed suicide. *Id.*  It is therefore reasonable to infer that by his acts and omissions, Faust caused Mr. Love's death."  Pl. Opp'n [28] at 14.  But no allegations in the Complaint assert that Director Faust ever interacted with Love or was even aware that he was incarcerated.  Paragraphs 31-34 of the Complaint reference the conduct of defendants other than Director Faust.  Thus, Plaintiff  seeks to hold Director Faust liable for the negligent conduct described in these paragraphs upon a theory of respondeat superior liability which she cannot do.  *See Haynesworth v. Miller,* 820 F.2d 1245, 1259 (D.C. Cir. 1987).  Consequently, the negligence claim against Director Faust should be dismissed.

**CONCLUSION**

For these reasons, along with those in Defendants' initial motion, the Court should grant the motion of Defendants District of Columbia and Thomas Faust for partial dismissal of the Complaint.

Date:  October 24, 2023                         Respectfully submitted,

                                                                BRIAN L. SCHWALB
                                                                Attorney General for the District of Columbia

                                                                STEPHANIE E. LITOS
                                                                Deputy Attorney General
                                                                Civil Litigation Division

                                                                */s/ Alicia M. Cullen/CC*

11

ALICIA M. CULLEN [1015227]
Chief, Civil Litigation Division, Section III

*/s/ Robert A. DeBerardinis, Jr.*
ROBERT A. DEBERARDINIS, JR. [335976]
Senior Assistant Attorney General
KATRINA SEEMAN [1671729]
Assistant Attorney General
Civil Litigation Division
400 6th Street, NW
Washington, D.C. 20001
Phone:  (202) 724-6642; (202) 724-6607
Fax:  (202) 741-8895; (202) 724-5917
Email: robert.deberardinis@dc.gov;
katrina.seeman@dc.gov

*Counsel for Defendants District of Columbia and
Thomas Faust*

12