**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

DOMINIQUE WATSON, on behalf of herself and as personal representative of the Estate of Giovanni Love,

*Plaintiff,*

v.

DISTRICT OF COLUMBIA, *et al.*

*Defendants.*

**Case No.: 1:23-CV-01670-BAH**

**JURY TRIAL DEMANDED**

---

DISTRICT OF COLUMBIA,

*Third-Party Plaintiff,*

v.

UNITED STATES OF AMERICA,

*Third-Party Defendant.*

---

DOMINIQUE WATSON, on behalf of herself and as personal representative of the Estate of Giovanni Love,

*Plaintiff,*

v.

UNITY HEALTH CARE INC., *et al.*,

*Defendants.*

**Case No.: 1: 24-CV-02281-BAH**

**(Consolidated with Case No. 23-cv-01670-BAH)**

**PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT TO RE-ASSERT CLAIMS AGAINST CORPORAL SUNDAY SAMUEL AKANBI**

Plaintiff Dominique Watson, on behalf of herself and as personal representative of the Estate of Giovanni Love, respectfully moves the Court for leave to amend her Amended Consolidated Complaint to re-assert claims against Corporal Sunday Samuel Akanbi. Plaintiff further asks that this Court find that the amendment relates back to her Original Complaint, or in the alternative, that the limitations period is equitably tolled such that Plaintiff's claims against Akanbi are timely.

The United States takes no position on Plaintiff's motion. The District opposes Plaintiff's motion.

In support of this motion, Plaintiff refers the Court to the accompanying memorandum of points and authorities and attached exhibits. A copy of Plaintiff's Second Amended Consolidated Complaint,[1] a redlined comparison between the original and consolidated complaint, and a proposed order are appended. *See* Exs. A, B, C.

Dated: August 4, 2026

Respectfully submitted,

*/s/ Annalise Wagner*

Attorneys for Plaintiff

[1] The proposed complaint is Plaintiff's first amendment to her Consolidated Complaint, which was filed on April 21, 2026. ECF No. 95. Subsequent pleadings and Minute Orders have referred to ECF No. 95 as Plaintiff's "Amended Consolidated Complaint." *E.g.*, ECF No. 97; Min. Order of May 5, 2026. To avoid confusion, Plaintiff refers to her proposed amendment as Plaintiff's "Second Amended Consolidated Complaint."

Maggie Filler
Annalise Wagner
Justin Hill
LOEVY & LOEVY
311 N. Aberdeen Street, 3rd Floor
Chicago, Illinois 60607
Tel: (312) 243-5900

# MEMORANDUM OF LAW AND POINTS OF AUTHORITIES

## TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. BACKGROUND .......... 2

III. LEGAL STANDARD .......... 6

IV. ARGUMENT .......... 8

A. Plaintiff Should Be Permitted to Amend Her Complaint to Pursue Her Claims Against Akanbi. .......... 9

B. Plaintiff's Proposed Amendment Relates Back to June 8, 2023 .......... 10

C. In the Alternative, the Statute of Limitations Should Be Equitably Tolled .......... 14

V. CONCLUSION .......... 17

# TABLE OF AUTHORITIES

**Cases**:

*Baggett v. Bullitt*, 377 U.S. 360 (1964) .......... 15

*Berndt v. State of Tenn.*, 796 F.2d 879, 884 (6th Cir. 1986) .......... 11

**Bradley v. Macomb County*, 370 F. Supp. 2d 607 (E.D. Mich. 2005) .......... 12, 13

*Davis v. Krauss*, 93 F.R.D. 580 (E.D.N.Y. 1982) .......... 14

*Foman v. Davis*, 371 U.S. 178 (1962) .......... 7

*Gipson v. Wells Fargo Corp.*, 382 F. Supp. 2d 116 (D.D.C. 2005) .......... 14

**Griffin v. Smith*, No. CV 24-0036, 2025 WL 19000 (D.D.C. Jan. 2, 2025) (Howell, J.) .......... 8, 14

*Gudavich v. District of Columbia*, 22 F. App'x. 17 (D.C. Cir. 2001) (per curiam) .......... 7

*DuPree v. Walters*, 116 F.R.D. 31 (S.D.N.Y. 1987) .......... 11, 12, 13

*Hafferman v. Westinghouse Elec. Corp.*, 653 F. Supp. 423(D.D.C. 1986) .......... 15

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 88 L. Ed. 1250 (1944) .......... 15

*Holland v. Fla.*, 560 U.S. 631 (2010) .......... 15

*Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89 (1990) .......... 8

**Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538 (2010) .......... 7, 10, 13

**Mondy v. Sec'y of the Army*, 845 F.2d 1051 (D.C. Cir. 1988) .......... 15

*Pace v. DiGuglielmo*, 544 U.S. 408 (2005) .......... 8

*Perkins Coie LLP v. U.S. Dep't of Just.*, 780 F. Supp. 3d 227 (D.D.C. 2025) (Howell, J.) .... 6, 7, 9

**Rendall–Speranza v. Nassim*, 107 F.3d 913 (D.C. Cir. 1997) .......... 11, 14

*Roberts v. Michaels*, 219 F.3d 775 (8th Cir. 2000) .......... 14

*Scott v. Coughlin*, 944 F. Supp. 266 (S.D.N.Y. 1996) .......... 11

*Singletary v. Pennsylvania Dep't of Corr.*, 266 F.3d 186 (3d Cir. 2001) .......... 11

*Smith v. Holder*, 806 F. Supp. 2d 59 (D.D.C. 2011) (Howell, J.) .......... 15

*Urban Sustainability Directors Network v. United States Department of Agriculture*, No.

CV 25-1775 WL 1877821 (D.D.C. June 30, 2026) (Howell, J.) ........................................ 7

**Valentine v. George Washington Univ.*, No. CV 24-1081 WL 2029802 (D.D.C. July 21, 2025) ........................................ 10, 11

*Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Loc. Union,* 639 F.2d 132 (D.C. Cir. 1989) ........................................ 7

*Zakora v. Chrisman*, 44 F.4th 452 (6th Cir. 2022) ........................................ 8

**<u>Rules</u>**:

Fed. R. Civ. P. 15(a)(2) ........................................ 6

Fed. R. Civ. P. 15(c) ........................................ *passim*

**<u>Other Authorities</u>**:

6 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE ........................................ 6

COUNCIL OF THE DISTRICT OF COLUMBIA, https://dccouncil.gov/judiciary-public-safety-5/ ........................................ 4

COUNCIL OF THE DISTRICT OF COLUMBIA, https://dccouncil.gov/judiciary-public-safety-6/ ........................................ 4

## I. INTRODUCTION

On June 9, 2022, Giovanni Love died by suicide in the District of Columbia's Central Detention Facility ("CDF"), while under the care of the District of Columbia's Department of Corrections ("DOC") and Unity Healthcare, Inc. ("Unity"). On June 8, 2023, Plaintiff Dominique Watson filed this suit on behalf of herself and as personal representative of the Estate of Giovanni Love, against the District of Columbia ("District"), Unity, DOC Director Thomas Faust, and "Officer Akaie," a Correctional Officer at CDF who failed to respond appropriately to Love's suicidal statements, and instead encouraged Love to kill himself. ECF No. 1 ¶¶ 2-7, 32. On June 20, 2023, Plaintiff attempted to serve "Officer Akaie" at CDF but was told that there was no "Officer Akaie." Ex. D, Investigative Due Diligence Aff.[2]

On September 7, 2023, Plaintiff moved for an extension of time to serve "Officer Akaie" and for limited discovery "to ascertain the Defendant's identity and/or current whereabouts," including an employee roster from the District. ECF No. 19. The District opposed Plaintiff's motion, explaining that the employee roster would not help uncover "Officer Akaie's" identity. ECF No. 21. On July 19, 2024, as relevant to this motion and described in more detail below, this Court dismissed without prejudice Plaintiff's claims against "Officer Akaie" after Plaintiff was unable to complete service within the requisite period. ECF No. 53 at 1 n.1.

The District's June 2026 discovery responses and Plaintiff's own investigation have revealed that the "Officer Akaie" referenced in Plaintiff's original complaint is DOC Corporal Sunday Samuel Akanbi. Plaintiff now moves for leave to amend her consolidated complaint to name Akanbi as a defendant, with the amendment relating back to the original filing date. In the

---

[2] Plaintiff completed service on all other Defendants within Rule 4(m)'s 90-day service period. *See* ECF Nos. 7-10.

alternative, Plaintiff asks that the limitations period for Plaintiff's claims against Akanbi be equitably tolled.

## II. BACKGROUND

### A. "Officer Akaie's" Misconduct and the Original Complaint

Giovanni Love had a diagnosed mental illness, prior suicide attempts by hanging, and repeated suicidal ideation. ECF No. 1 ¶ 13-21, 26, 29-31. Defendants nevertheless placed him in a general population cell, where he had access to a bedsheet and tie-off points that he used to hang himself. *Id.* at ¶¶ 23-26 Correctional officers failed to adequately monitor Love, ignored his pleas for help, and even encouraged Love to kill himself. *Id.* at ¶¶ 31-35. Tragically, and as a direct result of Defendants' actions, Love died by hanging. *Id.* at ¶ 36.

Shortly after Love's death, Plaintiff Dominique Watson (Love's widow) received a handwritten letter from one of Love's previous cellmates in Northeast One ("NE1"), the cell block in which Love died, stating: "The officer who told Gio[vanni Love] to kill himself name [sic] is Akaie." Ex. H, Letter from James Norris to Dominique Watson (July 11, 2022), at 2. Based on this information, Plaintiff named "Officer Akaie" as a defendant in her Original Complaint filed June 8, 2023, and alleged that "Officer Akaie is a guard at [CDF] who "encouraged Mr. Love to kill himself," "did nothing to mitigate the effect of this comment thereafter," and "did not help [Love]" after Love stated "that he was suicidal." ECF No. 1 ¶¶ 6, 31-32.

### B. The District States that "Officer Akaie" Could Not Be Identified.

After filing her Original Complaint, Plaintiff took steps to identify and serve "Officer Akaie." Shortly after filing her Original Complaint, Plaintiff attempted to serve "Officer Akaie" at CDF, but was told that the Sergeant "did not know any officers with the name Akaie." Ex. D.

In September 2023, Plaintiff moved for a 30-day extension to serve Officer Akaie and limited discovery to identify "Officer Akaie." ECF No. 19. The District opposed Plaintiff's motion, refused to agree to early discovery without a protective order in place, and stated that "providing an employee roster of the roughly 1,000 employees will not uncover this defendant's identity." ECF No. 21 at 1-2 & n.2.

The Court granted the 30-day extension but denied the discovery request. Minute Order of Sept. 18, 2023. Without better identifying information, however, Plaintiff remained unable to serve "Officer Akaie" even with the 30-day extension. The claims against him were dismissed without prejudice under Rule 4(m). ECF No. 53 at 1 n.1. At this juncture, Plaintiff's remaining claims are § 1983, Americans with Disabilities and Rehabilitation Act, and state law claims against the District of Columbia and a Federal Tort Claims Act claim against the United States. *See generally* ECF No. 95.

**C. Plaintiff Learns that "Officer Akaie" is Corporal Sunday Samuel Akanbi.**

The District's suggestion that disclosure of the employee rosters would not help identify "Officer Akaie" has proven inaccurate. Employee rosters found online, combined with the District's June 2026 discovery responses and Plaintiff's own investigation, now have uncovered "Officer Akaie's" identity.

On June 1, 2026, in response to Plaintiff's discovery requests seeking information related to suicide prevention, the District directed Plaintiff to "the Department of Corrections' publicly available oversight reporting to the District of Columbia Council" and explained that "[r]esponsive information is under the 'Judiciary' tab. Available at: https://dccouncil.gov/committee-oversight/." Ex. F, Def.'s Resp. to Pl.'s Req. for Produc. Nos. 15, 18 (June 1, 2022). After navigating to the "2022 Performance Oversight," and "2023

Performance Oversight" tabs, and then "Judiciary and Public Safety," "Department of Corrections," and "Performance Oversight Responses," and searching through nearly 2,000 pages of documents, Plaintiff found employee rosters for the period in which Love was incarcerated. Contrary to the District's September 2023 position, those rosters (1) do not require a protective order to be produced; and (2) *do* shed light on "Officer Akaie's" identity. There are only two DOC employees whose first or last names begin with "Aka": Maduabuchi Akaigwe and Sunday Akanbi. *See* COUNCIL OF THE DISTRICT OF COLUMBIA, https://dccouncil.gov/judiciary-public-safety-5/ (choose "Department of Corrections Performance Oversight Responses" and search "Aka") (last visited August 3, 2026) (FY 2021 and FY 2022 DOC performance oversight information); COUNCIL OF THE DISTRICT OF COLUMBIA, https://dccouncil.gov/judiciary-public-safety-6/ (choose "Department of Corrections Performance Oversight Responses" and search "Aka") (last visited August 3, 2026) (FY 2022 and FY 2023 DOC performance oversight information). Of those two individuals, only Sunday Akanbi was working in Love's cell block around the time of his death. Ex. G, DOC Office of Investigative Services Report, at 4. Consequently, had the District directed Plaintiff to the publicly-available (albeit difficult to locate without direction) employee rosters in September 2023, or had the District not represented that employee rosters would not lead to discovery of the Defendant's identity, there is a good chance that "Officer Akaie" could have been identified before the Rule 4(m) period expired. ECF No. 21 at 1.

Additional newly discovered evidence further indicates that Akanbi (who was known to NE1 detainees in June 2022 as "AK") is the "Officer Akaie" referenced in Love's cellmate's letter and named in Plaintiff's Original Complaint. In a declaration Plaintiff obtained on April 27, 2026, Arthur Harris, who was housed nearby in NE1 on June 9, 2022, stated that he heard

Love tell a CO (i.e., Correctional Officer) that he was suicidal and needed help. Ex. E, Arthur Harris Decl. ¶¶ 6-7. He heard the CO known as "AK" respond: "fuck you" and that Love should kill himself. *Id.* ¶ 8. Harris stated under penalty of perjury: "I believe AK's last name is Akanbi." *Id.* "Akaie" is a possible layman's phonetic spelling of "AK."

Similarly, in an audio-recorded interview produced to Plaintiff on June 11, 2026, [redacted]

[redacted] In his June 16, 2026, deposition, White confirmed that he understood Officer AK to be Sunday Akanbi. Ex. K, Charles White Dep. Tr. Excerpts, 209:19-210:6.

[redacted], the District did not produce these OIS audio recordings until June 11, 2026, and the OIS report itself does not mention [redacted], *see* Ex. L, District's Second Supp. Resp. to Pl.'s Request for Produc. No. 4 (served June 11, 2026); Ex. G (OIS Report); Ex. K, at 191:5-10 (White acknowledging that detainee statements were not included in his report). Prior to June 11, 2026, Plaintiff was not aware (1) [redacted]; (2) [redacted]; (3) [redacted]; or (4) that a DOC employee knew that the Officer "AK" who detainees referenced was Sunday Akanbi.

Now, with the benefit of employee rosters, OIS reports [redacted], and Harris' declaration, Plaintiff believes that the "Officer Akaie" named in her Original Complaint is Officer Akanbi. For the reasons that follow, this Court should allow Plaintiff to pursue her claims against Akanbi.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 15(a)(2) permits a party to amend its pleading "with the opposing party's written consent or the court's leave," which should be "freely give[n] . . . when justice so requires." Under this rule, a party may "add, substitute, or drop parties to the action." *Perkins Coie LLP v. U.S. Dep't of Just.*, 780 F. Supp. 3d 227, 234 (D.D.C. 2025) (Howell, J.) (quoting 6 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1474 (3d ed. 2016)). Federal courts have interpreted Rule 15(a) permissively, explaining that "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of

relief, he ought to be afforded an opportunity to test his claim on the merits." *Urb. Sustainability Dirs. Network v. U.S. Dep't of Agric.*, No. CV 25-1775, 2026 WL 1877821, at *5 (D.D.C. June 30, 2026) (Howell, J.) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Loc. Union 639*, 883 F.2d 132, 145 (D.C. Cir. 1989) (explaining that Rule 15 was "designed to facilitate a proper decision on the merits, and the opportunity to test the merits should ordinarily be accommodated if injustice will not otherwise result"). "The decision whether to permit amendment is vested in the sound discretion of the trial court, which can deny leave to amend based on either undue delay by the moving party or undue prejudice to the other side." *Perkins Coie*, 780 F. Supp. 3d at 235 (cleaned up). The party opposing the amendment bears the burden to show why leave should not be granted. *Urb. Sustainability Dirs. Network*, 2026 WL 1877821, at *5 (citing *Gudavich v. Dist. of Columbia*, 22 F. App'x. 17, 18 (D.C. Cir. 2001) (per curiam)).

Federal Rule of Civil Procedure 15(c) "governs when an amended pleading 'relates back' to the date of a timely filed original pleading and is thus itself timely even though it was filed outside an applicable statute of limitations." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 547 (2010). As relevant here, an amendment relates back to the filing date of the original complaint where (1) "the amendment asserts a claim or defense that arose out of the conduct transaction or occurrence set out . . . in the original pleading"; (2) "the party to be brought in by amendment," "within the period provided by Rule 4(m) for serving the summons and complaint," "received such notice of the action that it will not be prejudiced in defending on the merits"; and (3) within the same period provided by Rule 4(m), the to-be-added party "knew or should have known that the action would have been brought against it, but for a mistake

concerning the proper party's identity." *Id.* (citing Fed. R. Civ. P. (c)(1)(B)-(C)); *Griffin v. Smith*, No. CV 24-0036, 2025 WL 19000, at *5 (D.D.C. Jan. 2, 2025) (Howell, J.).

Where an amendment does not relate back under Rule 15(c), "equitable tolling . . . serve[s] as an adequate safety valve for those plaintiffs with good excuses." *Griffin*, 2025 WL 19000, at *6 (alterations in original) (quoting *Zakora v. Chrisman*, 44 F.4th 452, 482 (6th Cir. 2022)). Courts allow equitable tolling where (1) the claimant has been pursuing her rights diligently; but (2) some extraordinary circumstance, such as another party's misleading statements or actions, has stood in her way. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990).

## IV. ARGUMENT

Plaintiff should be permitted to pursue her claims against Corporal Sunday Samuel Akanbi, the officer who encouraged Love to commit suicide and failed to alert mental health to Love's suicidal ideations less than one day before Love's death. Akanbi was originally (and mistakenly) named as "Officer Akaie," a layman's phonetic spelling of his nickname "AK." Newly discovered evidence confirms that "Officer Akaie" is Sunday Akanbi. Allowing Plaintiff to pursue her claims against Akanbi would not cause undue prejudice; it would permit her to seek justice and accountability for Akanbi's actions that led to Love's death.

Plaintiff respectfully requests that this Court (1) grant Plaintiff leave to amend her complaint to re-assert her claims against Akanbi; and (2) find that the amendment relates back to Plaintiff's Original Complaint, or in the alternative, that the limitations period is equitably tolled such that Plaintiff's claims against Akanbi are timely.

### A. Plaintiff Should Be Permitted to Amend Her Complaint to Pursue Her Claims Against Akanbi.

This Court should grant Plaintiff leave to amend her complaint so that she may pursue her claims against Akanbi, the Correctional Officer who encouraged Love to kill himself and did not alert mental health staff to Love's suicidal statements. There has been no undue delay, bad faith, or dilatory motive on Plaintiff's part that would preclude amendment under Rule 15(a). *See Perkins Coie*, 780 F. Supp. 3d at 235. Plaintiff credited the District's representation that no "Officer Akaie" existed at CDF and that employee rosters would not aid in uncovering his identity. *See* ECF No. 21; Ex. D. Plaintiff filed the instant motion promptly after receiving evidence confirming that Akanbi is the "Officer Akaie" named in Plaintiff's Original Complaint.

Next, there is no undue prejudice to Defendants: the District has been defending this case, and the District and Akanbi share counsel. Ex. N (June 29, 2026 E-mail from Christopher Pantel, confirming representation of Sunday Akanbi). There is significant overlap between the claims against the District and against Akanbi. Based in part on Plaintiff's allegations regarding "Officer Akaie," Plaintiff has pursued a *Monell* claim against the District based on its failure to train its officers in suicide precautions, and its custom of ignoring detainees' stated suicidal ideations and failing to report such ideations to mental health staff. *See* ECF No. 53. Plaintiff's state law claims against the District are based on the same factual allegations as her proposed claims against Akanbi. *See* Ex. A ¶¶ 66-76. Accordingly, Plaintiff has already sought or obtained discovery regarding the circumstances of Love's death, suicide prevention training and procedures at CDF, and instances of NE1 officers (including Akanbi) ignoring suicidal statements, all of which are relevant to Plaintiff's claims against Akanbi. Plaintiff has also sought discovery specific to Akanbi himself, because even before learning that Defendant "Officer Akaie" is Akanbi, Plaintiff knew that Akanbi was on duty in Love's cell block on the day of his

death, and that Akanbi responded to Love's hanging. Ex. G at 4. For example, Plaintiff has obtained Akanbi's DOC personnel file and training history and the OIS investigative report [redacted]. Plaintiff has also noticed Akanbi's deposition. Given this already-obtained or requested discovery regarding Akanbi, Plaintiff does not anticipate seeking significant additional discovery related to her claims against Akanbi apart from what she has already sought from the District.

For similar reasons, amendment is not futile. Plaintiff has alleged that, shortly before Love's death, Love told Akanbi he was suicidal and asked for help, and that Akanbi encouraged him to kill himself. If proven, those allegations support Plaintiff's Fifth Amendment deliberate indifference, negligence, and wrongful death claims against Akanbi. This Court should permit Plaintiff to pursue these claims.

**B. Plaintiff's Proposed Amendment Relates Back to June 8, 2023.**

This Court should find that Plaintiff's Second Amended Consolidated Complaint, which states § 1983, negligence, and wrongful death claims against Akanbi, relates back to June 8, 2023, the date that Plaintiff filed her Original Complaint. Under Rule 15(c), an amendment relates back to the filing date of the original complaint where (1) it arises out of the same transaction or occurrence as the original pleading; (2) the to-be-added party received actual or constructive notice of the action within the Rule 4(m) service period; and (3) the to-be-added party knew or should have known that the action would have been brought against him absent Plaintiff's mistake. *Krupski*, 560 U.S. at 547; *Valentine v. George Washington Univ.*, No. CV 24-1081, 2025 WL 2029802, at *5-*6 (D.D.C. July 21, 2025). Plaintiff's amendment meets these three requirements. A relation back finding in this case also accords with the purpose of Rule

15(c)'s relation back doctrine: to "avoid the harsh consequences of a mistake." *Rendall–Speranza v. Nassim*, 107 F.3d 913, 918 (D.C. Cir. 1997).

First, there can be no real dispute that Plaintiff's proposed amendment arises out of the same transaction and occurrence as her original pleading; her original pleading asserted the same claims against "Officer Akaie" that she now wishes to assert against Akanbi.

Second, Akanbi had constructive notice of Plaintiff's suit against him during the service period.[3] Courts in this Circuit and others have held that constructive notice satisfies the second Rule 15(c) prong. *See Valentine*, 2025 WL 2029802, at *6 (collecting cases); *Singletary v. Pennsylvania Dep't of Corr.*, 266 F.3d 186, 196 (3d Cir. 2001) (acknowledging that notice under Rule 15(c) need not be accomplished by service of process and can be satisfied through "informal means" including shared representation); *Berndt v. State of Tenn.*, 796 F.2d 879, 884 (6th Cir. 1986) (constructive notice sufficient for purposes of Rule 15(c)).

Courts have found that defendants added by amendment have constructive notice where, as here, the new defendant and existing defendants are represented by the same counsel, and where the original complaint contains allegations specific to the new defendant, such that the new defendant or his attorney should have known of the action against him. *E.g.*, *Valentine*, 2025 WL 2029802, at *6; *Scott v. Coughlin*, 944 F. Supp. 266, 270 (S.D.N.Y. 1996) (Rule 15(c)'s notice requirement is satisfied "when the [new defendant's] attorney also represented the officials originally sued, so long as there is some showing that the attorney[] knew that the additional defendants would be added to the existing suit." (quotation marks omitted)); *DuPree*

---

[3] It is also likely that Akanbi had actual notice of the lawsuit. [redacted]; it is likely that officers involved in the incident were notified of the lawsuit, as well. *See* Ex. M, [redacted].

*v. Walters*, 116 F.R.D. 31, 34 (S.D.N.Y. 1987) ("Courts have uniformly held that knowledge of a lawsuit can be imputed to a new defendant state official through his attorney, when the attorney also represented the officials originally sued.").

For instance, in *Bradley v. Macomb County*, the court found that an amended § 1983 complaint related back to the original complaint where the original complaint named the county, the Sheriff, and an individual jail officer "Springer" as defendants, and alleged that "Defendant Springer" smashed Plaintiff's head into a wall in the jail. 370 F. Supp. 2d 607, 608 (E.D. Mich. 2005). Through discovery, Plaintiff learned that an officer "Yunker," not "Springer," was the individual who smashed his head into a wall, and he attempted to amend his complaint to change "Springer" to "Yunker" after the limitations period had lapsed. *Id.* at 608, 612. The court reasoned that new defendant "Yunker" had constructive notice under Rule 15(c) because the same attorney represented all named defendants, including Yunker, and the "alleged wrongful conduct" regarding Yunker/Springer "involve[d] a particular incident on one day" such that it was clear that Plaintiff was describing Yunker's misconduct. *Id.* at 612-13; *see also DuPree*, 116 F.R.D. at 34 (finding amended complaint related back where it named defendant who previously had same last name as guard named in original complaint where prison guard's attorney, who was representing other defendant guards, knew that plaintiff intended to sue new defendant guard).

Likewise, in this case, Akanbi and the District are both represented by the Office of the Attorney General for the District of Columbia ("OAG"), Ex. N,[4] and Akanbi's alleged wrongful conduct "involve[d] a particular incident on one day," i.e., Akanbi telling Love to kill himself

[4] OAG also represented Director Faust before the claims against him were dismissed and erroneously entered an appearance for "Officer Akaie" when appearing on behalf of Director Faust. ECF Nos. 11, 15-16.

after Love expressed suicidal ideations, *Bradley*, 370 F. Supp. 2d at 613. In light of the fact that only two DOC employees have names similar to "Akaie," and that, of those two, only Akanbi worked in Love's cell block in June 2022 and responded to Love's death, it should have been apparent to Akanbi and his counsel that Plaintiff's Original Complaint intended to pursue claims against him. Moreover, in many ways, Akanbi and the District's liability rise and fall together. Plaintiff's negligence and wrongful death claims against the District and Akanbi are based on the same factual allegations, *see* Ex. A ¶¶ 66-76, and Plaintiff's claims against the District allege that the District (1) failed to train its officers (including Akanbi) in proper suicide precaution measures; and (2) perpetuated a custom of officers (including Akanbi) ignoring suicidal statements, such that the District has been "on notice to prepare a defense for [Akanbi] as well" throughout this litigation, *DuPree*, 116 F.R.D. at 34. All in all, Akanbi had constructive notice of the claims against him.

Turning to the final prong of the relation-back analysis, given Akanbi's involvement in Love's suicide, he "knew or should have known" within the Rule 4(m) service period that he was not named as a defendant in this lawsuit "only because of [Plaintiff's] misunderstanding," that is, Plaintiff's mistaken inclusion of a phonetic spelling ("Akaie") of Akanbi's nickname ("AK"), rather than an accurate spelling of his legal name. *Krupski*, 560 U.S. at 554. Akanbi is one of only two DOC staff members whose last names start with "Aka." *See* Section I.C., *supra*. Akanbi was working in Love's cell block on the day of Love's death and was the first DOC officer to respond when Love's cellmate found him hanging in their cell. Ex. G at 3; Ex. J at 15:19-24. This is not a case of an unknown "John Doe" defendant, whose identity a plaintiff later learns and attempts to add in via amendment (where there is no "mistake"); it is a case in which Plaintiff mistakenly believed that an officer named "Akaie" told Love to kill himself, when in

fact it was an officer named "Akanbi." *Griffin*, 2025 WL 19000, at *5 (collecting cases and distinguishing the former scenario, in which prong three of Rule 15(c) is not satisfied, from the latter, in which it is satisfied); *Rendall-Speranza*, 107 F.3d at 918 ("A potential defendant who has not been named in a lawsuit by the time the statute of limitations has run is entitled to repose—unless it is or should be apparent to that person that he is the beneficiary of a mere slip of the pen, as it were."). Put differently, Plaintiff has "sue[d] the right party by the wrong name," which satisfies the final prong of Rule 15(c). *Gipson v. Wells Fargo Corp.*, 382 F. Supp. 2d 116, 119-20 (D.D.C. 2005) (citing *Roberts v. Michaels*, 219 F.3d 775, 777–78 (8th Cir. 2000)); *cf. Davis v. Krauss*, 93 F.R.D. 580, 582 (E.D.N.Y. 1982) (finding relation back where amendment sought to substitute "Josef Boutin, Dennis Sheeran, and Karl Mogenis" for originally-named defendants "Joseph Souton" and "Dennis Sheeran, McGuinness").

In sum, Plaintiff has met Rule 15(c)'s requirements, and relation back is appropriate in this case. Indeed, under these facts, relation back "serve[s] the evident purpose of the rule, which is to avoid the harsh consequences of a mistake that is neither prejudicial nor a surprise to the misnamed party." *Rendall-Speranza*, 107 F.3d at 918. This Court should find that Plaintiff's Second Amended Complaint relates back to June 8, 2023.

### C. In the Alternative, the Statute of Limitations Should Be Equitably Tolled.

Should this Court conclude that Plaintiff's claims against Akanbi do not relate back to the Original Complaint, Plaintiff asks in the alternative that this Court equitably toll the limitations period from, at the latest, September 18, 2023 (the date of the District's response to Plaintiff's motion for limited discovery) through April 27, 2026 (the date of Harris' declaration stating that he understood Officer "AK" to be Akanbi) or June 16, 2026 (the date of White's deposition, in

which he confirmed that Officer "AK" who allegedly told Love to kill himself was Akanbi), making Plaintiff's claims against Akanbi timely.

"Application of equitable tolling is solely within the Court's discretion." *Smith v. Holder*, 806 F. Supp. 2d 59, 63 (D.D.C. 2011) (Howell, J.). While analogous case law is of course instructive, the question of whether to apply equitable tolling "must be made on a case-by-case basis" so that courts may "meet new situations [that] demand equitable intervention." *Holland v. Fla.*, 560 U.S. 631, 649-50 (2010) (alterations in original) (quoting *Baggett v. Bullitt*, 377 U.S. 360, 375 (1964); then quoting *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 248, 64 S. Ct. 997, 1002, 88 L. Ed. 1250 (1944)). In this case, analogous case law, as well as the specific facts of this case, counsel in favor of equitably tolling Plaintiff's claims against Akanbi.

Courts have tolled limitations periods in situations where, as here, the plaintiff did not identify the correct defendant within the limitations period, but equitable considerations nevertheless permitted her to pursue her claims. For instance, in *Mondy v. Sec'y of the Army*, a plaintiff named the wrong defendant and relation back did not apply, as the correct defendant did not receive notice of the lawsuit within the service period. 845 F.2d 1051, 1052-53, 1057 (D.C. Cir. 1988). The court nevertheless concluded that equitable tolling was appropriate, as the lack of notice was because of a third party's delay in completing service (the United States Marshal's Office ultimately served the correct party, even though they were not formally named in the complaint; at that point, however, the service period had lapsed). 845 F.2d 1051, 1052-53, 1057 (D.C. Cir. 1988); *cf. Hafferman v. Westinghouse Elec. Corp.*, 653 F. Supp. 423, 429 (D.D.C. 1986) (permitting plaintiff to pursue his claims where failure to name proper defendants was because proper defendant "fail[ed] to identify itself at any time prior to the expiration of the statute of limitations").

The equities counsel in favor of tolling Plaintiff's claims against Akanbi. Plaintiff did not previously attempt to substitute Akanbi for "Akaie" because the District deprived her of key information that would have uncovered "Akaie's" correct legal name. [redacted] White later testified that he understood "AK" to be Akanbi, because the three officers on shift the day Love died were Sunday Akanbi, Earnest Wallace, and Ini Udoh. Ex. K, 209:13-210:6. Plaintiff did not learn this crucial information until June 2026, because White did not mention [redacted] in his OIS report, and the District did not produce the audio recordings [redacted] until June 2026. Ex. G; Ex. L at 4. Additionally, early in this litigation, Plaintiff sought employee rosters—which would have revealed that only two officers (including Akanbi) have names that are similar to "Akaie"—but was told that those rosters would not lead to discovery of "Akaie's" identity. ECF No. 21. Had the District apprised Plaintiff of any of these key pieces of information earlier, she would have been able to pursue her claims against Akanbi within the limitations period.

Finally, and perhaps most importantly, Plaintiff's challenges in identifying "Akaie" are largely attributable to the fact that Giovanni Love did not survive his June 9, 2022 suicide, and cannot help his counsel identify the officer who told him to kill himself and ignored his pleas for help. Instead, Plaintiff is left to piece together a picture of what happened to Giovanni Love through the accounts of third parties and Defendants. Under these circumstances, this Court should equitably toll Plaintiff's claims against Akanbi.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff's motion and (i) grant Plaintiff leave to file her Second Amended Complaint, which re-asserts claims against Corporal Sunday Samuel Akanbi; and (ii) find that the amendment relates back to June 8, 2023 or, in the alternative, find that the claims against Akanbi are timely based on equitable tolling.

Dated: August 4, 2026

Respectfully submitted,

*/s/ Annalise Wagner*

Attorneys for Plaintiff

Maggie Filler
Annalise Wagner
Justin Hill
LOEVY & LOEVY
311 N. Aberdeen Street, 3rd Floor
Chicago, Illinois 60607
Tel: (312) 243-5900