**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DOMINIQUE WATSON, on behalf of herself and as putative personal representative of the Estate of Giovanni Love,<br><br>*Plaintiff,*<br>v.<br><br>DISTRICT OF COLUMBIA, *et al.*<br><br>*Defendants.* | **Case No.: 1:23-CV-01670-BAH**<br><br>**JURY TRIAL DEMANDED** |

---

| | |
|---|---|
| DISTRICT OF COLUMBIA,<br><br>*Third-Party Plaintiff,*<br>v.<br><br>UNITED STATES OF AMERICA,<br><br>*Third-Party Defendant.* | |

---

| | |
|---|---|
| DOMINIQUE WATSON, on behalf of herself and as putative personal representative of the Estate of Giovanni Love,<br><br>*Plaintiff,*<br>v.<br><br>UNITY HEALTH CARE INC., *et al.*,<br><br>*Defendants.* | **Case No.: 1: 24-CV-02281-BAH**<br><br>**(Consolidated with Case No. 23-cv-01670-BAH)** |

**PLAINTIFF'S SECOND AMENDED CONSOLIDATED COMPLAINT**

1. Plaintiff Dominique Watson, brings this action as administrator of the Estate of Giovanni Love, by counsel, Loevy & Loevy, against the defendants described herein, and states as follows:

**PARTIES**

2. Plaintiff Dominique Watson is the widow of Giovanni Love and the personal representative of his estate. The Superior Court of the District of Columbia, Probate Division, appointed Plaintiff as personal representative on June 23, 2023.

3. Decedent Giovanni Love was a resident of the District of Columbia. He was married to Ms. Watson, and had two young children.

4. Defendant District of Columbia operates and administers the District of Columbia Department of Corrections and the Central Detention Facility (the "Jail"), where Mr. Love was detained when he died. The DOC is responsible for the safekeeping, care, protection, instruction, and discipline of "all persons committed to" the "Jail." D.C. Code § 24-211.02(a). The District of Columbia employed guards and other correctional staff at the Jail. The District of Columbia also employs staff of the District of Columbia Department of Behavioral Health. Mr. Love was under the care of this defendant when he died.

5. Defendant Sunday Samuel Akanbi, also known as "AK," is a guard at the Jail.

6. Defendant United States is the proper Defendant for Plaintiff's negligence and wrongful death claims brought pursuant to the Federal Tort Claims Act. Pursuant to 42 U.S.C. §§ 233(c) and 233(g)(1)(A), the United States has certified that it is the statutory employer of Unity Healthcare, Inc. and is therefore the proper Defendant under the Federal Tort Claims Act. Unity

Healthcare is an outside vendor contracted by the District of Columbia to provide medical health care services to inmates in District of Columbia Department of Corrections facilities, including the Central Detention Facility (the "Jail"). Unity employed healthcare staff at the Jail. Mr. Love was under the care of this defendant when he died.

7. Defendant John Does are multiple persons sued herein by fictitious names for the reason that their true names are unknown to Plaintiff. Plaintiff will seek leave to amend this complaint to allege the true names and capacities of these Defendants when their identities have been ascertained. Plaintiff is informed and believes, and based thereon alleges, that these fictitiously-named Defendants are responsible in some manner for the misconduct alleged herein. On information and belief, each of the Doe defendants was an employee or agent ("staff") of defendants District of Columbia and/or Unity Healthcare, Inc. and acting within the scope of their employment in all the events alleged herein.

**JURISDICTION AND VENUE**

8. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a), as Plaintiff's causes of action are brought under the Fifth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act, and the Rehabilitation Act. This Court has jurisdiction over claims against the United States pursuant to 28 U.S.C. § 1346(b)(1), as Plaintiff's causes of action are brought against the United States for money damages for injury and death caused by the negligent and wrongful acts and omissions of federal employees while acting within the scope of their employment.

9. The Court has supplemental jurisdiction over Plaintiff's related state law claims under 28 U.S.C. § 1367, because they form part of the same case or controversy as his federal claims.

10. Venue is proper under 28 U.S.C. § 1391(b). One or more defendants reside in this judicial district, and a substantial portion of the events giving rise to the claims asserted herein occurred within this district.

## FACTUAL ALLEGATIONS

11. Giovanni Love was a young man who lived in the District of Columbia.

12. Mr. Love, who had grown up as a ward of the state, was mentally ill. He had been diagnosed by the District of Columbia Department of Behavioral Health with a depressive or mood disorder that placed him at risk for manic conduct, anxiety, depression, impulsive actions, self-harm, suicidal ideations, and suicide.

13. As a result of his mental health condition and the consequent risk of self-harm, Mr. Love had been prescribed multiple antipsychotic medications.

14. Mr. Love had relatedly engaged in self-harm in the past, including acts of self mutilation that left scars on his body.

15. Mr. Love had in the past also attempted suicide by hanging himself, and on multiple occasions he had expressed suicidal ideations.

16. Jail and/or health staff were well aware of Mr. Love's mental illness and his high risk for suicide, as multiple self-harm and suicidal events described above had occurred while Mr. Love had been detained at the Jail on previous occasions.

17. In fact, it was the isolating, harsh, and impersonal conditions in the Jail that drove Mr. Love to suicidal and self-harm behavior, as it was during his incarcerations that he had primarily engaged in self-harm and suicidal behavior.

18. As a result, when Mr. Love was detained at the Jail in March and April 2022, the Jail's computerized inmate information system prominently displayed a warning that he was "suicidal". This information system was widely accessible to personnel at the Jail.

19. The information in the computerized system was available to and would have been accessed by anyone at the Jail making placement decisions, classification decisions, overseeing detainee medical and mental healthcare, and any person responsible for protecting Jail detainees against self-harm.

20. During his several prior incarcerations, Jail and/or health staff had also prescribed and/or administered multiple antipsychotic drugs to Mr. Love, specifically to address his mental illness and the risk that he would harm himself or commit suicide.

21. On or about May 24, 2022, Mr. Love was arrested and again detained at the Jail.

22. Despite his history of mental illness and suicide attempts, on June 3, 2022, Jail and health staff removed Mr. Love from suicide precautions and moved him to a cell that did not permit careful and constant monitoring.

23. Between June 3, 2022, and Mr. Love's death by suicide, Jail and/or health staff failed to place Mr. Love in a cell that would help prevent him from engaging in the suicidal and self-harm conduct he had undertaken in the past.

24. Instead, Jail and/or health staff placed Mr. Love in a protective custody cell, with access to implements with which he could harm himself, including bedsheets.

25. During this period of incarceration, Mr. Love was significantly agitated and spoke about killing himself.

26. Mr. Love deteriorated and began to engage in acts of self-harm, including cutting himself.

27. He also became despondent, and by June 6 he had written a suicide note to his wife.

28. During this period, Mr. Love told Jail and/or health staff that he was suicidal. But they did not help him.

29. Instead at least one correctional official, Defendant Akanbi, encouraged Mr. Love to kill himself, and did nothing to mitigate the effect of this comment thereafter.

30. Besides failing to place Mr. Love in a suicide-resistant cell, Jail and/or health staff did not ensure that Mr. Love was monitored carefully. Instead, the staff had him placed in a protective custody cell that had standard, 30-minute monitoring of cells.

31. Such 30-minute monitoring is not frequent enough to be protective of detainees who are at risk of suicide or self-harm, as it allows ample time to fashion a means of self-harm or suicide, and permits enough time for a suicide attempt to be completed before staff are able to recognize the suicide attempt and intervene.

32. Additionally, on the day Mr. Love strangled himself, the Jail staff assigned to perform the 30-minute cell checks of Mr. Love's cell failed to conduct quality safety checks.

33. For a time Mr. Love had a friendly and encouraging cellmate, who kept him company and was able to intervene and prevent Mr. Love from engaging in acts of self-harm.

34. However, on the day of Mr. Love's death, Jail and/or health staff changed the celling assignments, causing Mr. Love and the cellmate to be placed in separate cells.

35. As result of the misconduct described above, on June 9, 2022, Mr. Love, alone in his cell, fashioned a noose out of a bedsheet and hung himself. When he was eventually found, he was pronounced dead at the scene.

36. On June 7, 2023, Plaintiff provided notice of the claims herein to Defendant Unity Health and the U.S. Department of Health and Human Services via a Form 16-2802 and Form SF-95 and accompanying letters.

37. As of the date of Plaintiff's filing of her complaint against the Unity/the United States (August 2, 2024), Plaintiff had not received a decision on her claims. Therefore, she received a constructive denial of her claims.

**COUNT I – 42 U.S.C. § 1983**

**Against Defendants District of Columbia and Sunday Akanbi**

38. Each paragraph of this complaint is incorporated as if fully restated here.

39. All detainees and prisoners at D.C. Jail received on-site mental health services from clinicians from defendant Unity Health. And the Department of Corrections was responsible for the detainees' overall wellbeing.

40. Multiple audits and investigations, however, have shown that these entities do a poor job of treating detainees humanely in general, and of protecting against suicide in particular.

41. As demonstrated in the audit and investigative findings of Lindsay Hayes per his Report on Suicide Prevention Practices within the District of Columbia Department of Corrections Central Detention Facility, the Department of Corrections had a systemic lack of care for detainees by providing inadequate and irrelevant training to its employees and clinicians that fell below applicable national standards, and a custom of performing hollow inmate medical

evaluations that were comprised of cursory, incomplete, or meaningless questions that lead to flawed data and avoidable failures to diagnose and treat seriously ill and obviously afflicted inmates. The Hayes report also criticized the D.C. Jail's widespread lack of monitoring of suicidal detainees, noting that these detainees were monitored only once every 30 to 60 minutes.

42. Despite this report, later reports including a report by the Washington Lawyer's Committee for Civil Rights and Urban Affairs, indicated that such problems had not been fixed, and pointed in particular to an apparent lack of safe cells for suicidal inmates, as well a lack of utilization of safe cells.

43. More recent inspections of the Jail have revealed similar problems. Among other things, a 2021 inspection by the U.S. Marshals service observed widespread problems at the jail, including routinely abusive and punitive behavior by jail guards towards detainees there. Among other things, U.S. Marshal inspectors repeatedly observed guards antagonizing detainees at the jail, failing to screen detainees at entrance, and reported indifference by jail supervisors to the inappropriate conditions at the jail.

44. Prior to the events giving rise to Plaintiff's Complaint, defendants District of Columbia and Unity Health had notice of widespread policies and practices by healthcare and correctional staff at the Jail, pursuant to which detainees at risk of suicide like Mr. Love lacked adequate protection, such as the lack of protections for Mr. Love and other detainees that are described in this complaint. Despite knowledge of these problematic policies and practices, defendants District of Columbia and Unity Health failed to ensure that mentally ill detainees in the Jail like Mr. Love in received adequate care and protection to prevent them from committing suicide. In this way, defendants District of Columbia and Unity Health violated Mr. Love's

rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations.

45. In the manner more fully described above, Defendants had reasonable opportunity to prevent the violation of Mr. Love's constitutional rights as set forth above had they been so inclined, but failed to do so.

46. As a direct and proximate result of these failures, Mr. Love's rights were violated and he suffered injuries, including but not limited to emotional distress and death.

47. Mr. Love's death was caused by employees of Defendants, including but not limited to Defendant Akanbi, and the individually named Doe Defendants, who acted pursuant to the policies and practices described more fully above.

**COUNT II - AMERICANS WITH DISABILITIES ACT**

**Against Defendant District of Columbia**

48. Each paragraph of this complaint is incorporated as if fully restated here.

49. Congress enacted the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).

50. Title II of the ADA (codified at 42 U.S.C. § 12132) states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

51. To prevent discrimination, 28 C.F.R. § 35.130(b)(7) requires a public entity to "make reasonable modifications in policies, practices, or procedures when the modifications are

necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the services, program, or activity."

52. The District of Columbia, the District of Columbia Department of Corrections, and the District of Columbia Department of Behavioral Health are public entities as defined in 42 U.S.C. § 12131(1).

53. At all times relevant to this Complaint, in light of his severe mental illness, Mr. Love was a qualified individual with a disability within the meaning of Title II of the ADA, 42 U.S.C. § 12131(2).

54. Due to his mental illnesses, Mr. Love had a mental impairment that substantially limited one or more major life activities, including but not limited to thinking, keeping himself safe, and controlling his behavior. As a result of his mental disabilities, he required mental healthcare and other services sufficient to protect him from harming himself and committing suicide once placed in confinement.

55. Mr. Love was wholly dependent upon the District of Columbia for basic daily needs and appropriate accommodations. As a pretrial detainee of the District of Columbia, he met the essential eligibility requirement for receipt of services or the participation in programs or activities provided by the District of Columbia.

56. Under Title II of the ADA and 28 C.F.R. § 35.130(a), District of Columbia was responsible for ensuring that individuals in custody with known disabilities are provided with reasonable accommodations to prevent discrimination on the basis of disability.

57. Despite Mr. Love's known and obvious disability—his mental illness and his repeated attempts to self-harm— District of Columbia failed to reasonably accommodate his disability and failing to provide him with access to a reasonably safe place of confinement that would not place him at risk for self-harm or suicide, which the District of Columbia offers to other detainees by constructing cells to be reasonably safe and by performing services like monitoring to ensure continuous safety.

58. The foregoing accommodations were reasonable and, if provided to mentally ill detainees like Mr. Love, would have permitted Mr. Love to remain safe while he was incarcerated. Instead, these necessary accommodations were not made, with the result that Mr. Love committed suicide.

59. Due to the failure of Defendants to provide Mr. Love with the foregoing accommodations, he was deprived of the reasonably safe place of confinement that the District of Columbia provides to other jail detainees.

60. As a result of the Defendants' failure to provide reasonable accommodation for his mental illness, Mr. Love's rights were violated and he suffered injuries, including but not limited to emotional distress and death.

**COUNT III – REHABILITATION ACT**

**Against Defendant District of Columbia**

61. Each paragraph of this complaint is incorporated as if fully restated here.

62. At all times relevant to this Complaint, in light of his mental illness, Mr. Love was a qualified individual with a disability as defined in Section 504 of the Rehabilitation Act of 1973.

63. The District of Columbia, the District of Columbia Department of Corrections, and the District of Columbia Department of Behavioral Health receive federal financial assistance.

64. Defendants discriminated against Mr. Love by failing to provide a reasonable accommodation for his mental disabilities.

65. As a result of the Defendants' failure to provide reasonable accommodation for his mental illness, Mr. Love's rights were violated and he suffered injuries, including but not limited to emotional distress and death.

**COUNT IV – NEGLIGENCE**

**Against All Defendants**

66. Each paragraph of this complaint is incorporated as if fully restated here.

67. Plaintiff further alleges that this claim arises under the District of Columbia Survival Statute, D.C. Code § 12-101.

68. The defendants owed Mr. Love a duty of reasonable care under the circumstances to protect him from self-harm and ensure his safety as a pretrial detainee under the custody and control of the Department of Corrections.

69. Codified at D.C. Code § 24-211.02 (formerly § 24-442), this duty provides that the District is "responsible for the safekeeping, care, protection, instruction, and discipline of persons committed" to its facilities, which has been held to impose on prison authorities at the Jail, a common law duty to exercise reasonable care under the circumstances in the protection and safekeeping of detainees.

70. Based on the special relationship between the jailer and detainee, this duty includes a responsibility to prevent the arrestee or prisoner's own suicide.

71. For the reasons set forth above, including the defendants' unlawful acts, omissions, policies and practices as alleged herein, the defendants failed to act reasonably to secure Mr. Love's safety and breached their duty of care.

72. The defendants were therefore negligent and, as a direct and proximate cause of such negligence, are liable for Mr. Love's injuries including severe physical pain, mental anguish, hopelessness, distress, death and resulting damages suffered by him and his survivors. As a further and direct proximate cause of the defendants' negligence, Mr. Love's estate lost the future earnings and other recoverable economic and non-economic damages.

73. Mr. Love's right of action for these injuries prior to his death survives in favor of his widow, the personal representative of his Estate, and his children.

**COUNT V - WRONGFUL DEATH**

**Against All Defendants**

74. Each paragraph of this complaint is incorporated as if fully restated here.

75. Plaintiff further alleges that this claim arises under the District of Columbia Wrongful Death Statute, D.C. Code § 16-2701 et seq.

76. As a direct and proximate cause of the negligence of the defendants as described herein, Plaintiff incurred cremation expenses, similar consequential losses, and the loss of financial support furnished and expected to be furnished by the Decedent, together with any other pecuniary losses or damages recoverable under the statute.

**DAMAGES**

77. Each paragraph of this complaint is incorporated as if fully restated here.

78. As a proximate result of the acts and omissions described herein, Plaintiff Mr. Love's injuries including severe physical pain, mental anguish, hopelessness, distress, death and resulting damages suffered by him and his survivors. As a further and direct proximate cause of the defendants' negligence, Mr. Love's estate lost the future earnings and other recoverable economic and non-economic damages.

79. As a direct and proximate cause of the acts and omissions of the defendants as described herein, Plaintiff incurred consequential losses, and the loss of financial support furnished and expected to be furnished by the Decedent, together with any other pecuniary losses or damages recoverable under the statute.

**WHEREFORE,** Plaintiff asks the Court to award: actual damages, punitive damages, attorneys' fees and costs, and all other relief that is just and appropriate.

Dated: August 3, 2026

RESPECTFULLY SUBMITTED,

*/s/ Annalise Wagner*

Attorneys for Plaintiff

Annalise Wagner
Justin Hill
Maggie Filler

LOEVY & LOEVY
311 N. Aberdeen, Third Floor
Chicago, IL 60607
(312) 243-5900
wagner@loevy.com
hill@loevy.com
maggie@loevy.com